IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TASHA ECKFORD, Individually and
as Mother and Next Friend of T.C., a minor                                    PLAINTIFFS

v.                                                         CIVIL ACTION NO. 1:23-CV-18-SA-RP

JOSHUA LOVELADY;
ALFA MUTUAL INSURANCE CO.;
and JOHN DOES 1-10                                                             DEFENDANTS

ORDER AND MEMORANDUM OPINION

On December 22, 2022, Tasha Eckford, individually and as mother and next friend of T.C., a minor (collectively "the Plaintiffs"), initiated this civil action by filing their state court Complaint [2] against Joshua Lovelady and Alfa[1] in the Circuit Court of Lowndes County, Mississippi. On February 6, 2023, Lovelady and Alfa jointly filed a Notice of Removal [1], removing the case to this Court and premising federal jurisdiction on the basis of diversity. Thereafter, Lovelady filed a Motion to Dismiss for Failure to State a Claim [5].[2] The Plaintiffs subsequently filed a Motion to Remand [10], arguing that there is not complete diversity of citizenship. The Court is prepared to rule.

*Factual Background*

On January 5, 2020, the Plaintiffs were involved in a car accident in Tupelo, Mississippi. The Plaintiffs' vehicle collided with a vehicle operated by Shawn Kelly. Both Plaintiffs were injured. Following the accident, Kelly sought coverage from Alfa, Eckford's insurer, but Alfa

---

[1] According to Lovelady's Memorandum [6], the Plaintiffs name Alfa Mutual Insurance Company as one of the Defendants, but the insurance policy was issued by Alfa Insurance Corporation—which would be the proper Defendant in this action.
[2] The Plaintiffs did not file a Response to the Motion [5], and their deadline to do so has long passed. However, the Plaintiffs' position in connection with the Motion to Dismiss [5] is undeniably intertwined with the arguments articulated in their Motion to Remand [10].

denied the claim and determined that Kelly was 100% at fault for causing the accident and the Plaintiffs' injuries. On November 16, 2020, the Plaintiffs settled with Kelly's insurer and exhausted the limits under his policy. The Plaintiffs contend that the settlement was insufficient to cover future medical expenses for T.C. and lost wages of Eckford. Therefore, Eckford sought to recover full policy limits under her underinsured motorist coverage with Alfa.

Lovelady was the insurance adjuster assigned to adjust the Plaintiffs' underinsured motorist claims on Alfa's behalf. The Plaintiffs contend that as of December 10, 2021, Lovelady had all the relevant information he needed to properly evaluate their claims; however, Lovelady requested additional, unnecessary employment information from Eckford and improperly took a wait-and-see approach for T.C.'s medical claim, ultimately placing their claims in a "perpetual state of delay." [2] at p. 3. According to the Plaintiffs' Complaint [2], on August 9, 2022, "Lovelady determined that Eckford's and T.C.'s claims were not worth the available policy limits." *Id.* The Plaintiffs further contend that beginning on August 23, 2022, Lovelady refused to negotiate any further and refused to offer the Plaintiffs adequate payment for their claims.

After unsuccessful attempts to reach a settlement, the Plaintiffs filed this action in state court alleging tortious breach of contract and bad faith against Alfa and gross negligence against Lovelady.[3] On February 6, 2023, the Defendants removed the action to this Court alleging that diversity jurisdiction existed at the time of removal because, although the Plaintiffs and Lovelady are Mississippi residents (which would destroy complete diversity), the Plaintiffs cannot establish a claim against Lovelady. Therefore, according to the Defendants, Lovelady is fraudulently joined and his citizenship should not be considered for purposes of the diversity jurisdiction analysis. Through his Motion to Dismiss [5], Lovelady seeks dismissal of the claims. Conversely, the

---

[3] For context, the entire claim the Plaintiffs assert against Lovelady is a claim of "gross negligence and reckless disregard." For simplicity purposes, the Court will refer to the claim as a gross negligence claim.

2

Plaintiffs filed a Motion to Remand [10], contending that they have plausible claim for recovery against Lovelady and, therefore, this Court does not have jurisdiction over the case.

*Removal Standard*

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction. *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); *Addo v. Globe Life and Accidents Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). After a case is removed, a plaintiff may move for remand, and "[i]f it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

*Analysis and Discussion*

As noted above, the Plaintiffs move to remand this case on the basis that this Court does not have jurisdiction because Lovelady is a non-diverse Defendant. Therefore, the only question before the Court is whether the Plaintiffs have stated a viable gross negligence claim against

Lovelady (since that is the only claim asserted against Lovelady). If the claim is viable, the case must be remanded. Conversely, if it is not viable, Lovelady should be dismissed and the Court should retain jurisdiction over the case.

The Mississippi Supreme Court has set forth the standard pursuant to which insurance adjusters, agents, or other similar entities may be held liable for conduct in connection with adjusting a claim. *Bass v. California Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991) (additional citations omitted). Under that standard, "[a]n insurance adjuster [] may not be held liable for simple negligence in connection with adjusting a claim." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004) (citing *Bass*, 581 So. 2d at 1090). Instead, the only way an insurance adjuster "can incur independent liability is when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Bass* 581 So. 2d at 1090.

The Plaintiffs argue that the allegations in their state court Complaint [2] state a viable gross negligence claim against Lovelady. In their supporting Memorandum [11], the Plaintiffs contend that "the crux of [their] claims against Lovelady is his failure to conduct a prompt, reasonable and diligent investigation of the claims made." [11] at p. 3. Particularly, the Plaintiffs contend that Lovelady's failure to conduct a prompt investigation and his decision to base settlement offers upon an incomplete investigation and inadequate information constitutes gross negligence. As for promptness, the Plaintiffs argue that Lovelady had the necessary documentation to evaluate Eckford's lost wages claim as early as December 10, 2021. The Plaintiffs allege that instead of evaluating the claim with the information he had (which they deem was sufficient), Lovelady requested that Eckford provide a letter from her employer showing how many hours she missed so that he could assess her lost wages claim. According to Eckford, she informed Lovelady that she was unable to obtain a letter from her employer because she was no longer employed at

4

the job, and even if she could, the letter was unnecessary because she had already provided Lovelady with the employment documents he needed to properly assess her claim. According to the Plaintiffs, Lovelady sat on that information for more than eight months before determining the Plaintiffs' claims were not worth the policy limits. The Plaintiffs allege that the eight-month delay was an act of bad faith on Lovelady's behalf and is sufficient to state a claim of gross negligence against Lovelady.

The Plaintiffs also argue that Lovelady's actions amounted to gross negligence because he failed to conduct a reasonable and diligent investigation. Specifically, the Plaintiffs allege that instead of conducting his own independent investigation, he assumed that Eckford's employer would have the documentation he needed. According to the Plaintiffs, Lovelady's insistence that he receive additional information was unreasonable because he already had the information he needed to properly assess Eckford's lost wage claim. For the same reasons, the Plaintiffs contend that Lovelady's conduct fell below the requisite threshold for a reasonable and diligent investigation. The Plaintiffs contend that accepting all of these allegations as true, they have sufficiently stated a gross negligence claim against Lovelady.

To support their contention that an eight-month delay was an act of bad faith constituting gross negligence, the Plaintiffs cite the Mississippi Supreme Court's decisions in *Necaise v. U.S.A.A. Cas. Co.*, 644 So. 2d 253, 260 (Miss. 1992) and *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829, 835 (Miss. 1979) (both holding that an eight-month delay in disbursing payment was an act of bad faith on behalf of the insurance adjuster).

Conversely, Lovelady argues that the case should not be remanded because he has been fraudulently joined as a Defendant and his citizenship should not be considered for purposes of diversity. Lovelady contends that what the Plaintiffs attempt to categorize as grossly negligent

actions "[m]erely describe [Lovelady's] efforts to conduct a thorough investigation and further bolster the Plaintiffs' claimed damages." [6] at p. 10. Furthermore, in his Response Memorandum [16], Lovelady contends that the Plaintiffs admit that their claims have been delayed because there have been disagreements on what their claims are worth and their refusal to provide the additional documentation. Lovelady contends that his requests for additional information do not constitute gross negligence, but, rather, simply illustrate an effort to fully investigate the Plaintiffs' claims. In particular, Lovelady alleges that "on one hand, they complain about Lovelady's requests for documentation while, on the other hand, they complain that Lovelady did not independently obtain the information he needed." [16] at p. 4-5. To support his argument, he relies on *Pilate v. Am. Federated Ins. Co.*, 865 So. 2d 387 (Miss. Ct. App. 2004). There, the Mississippi Court of Appeals held that an insurer is required to "[o]btain 'all available medical information relevant to the policyholder's claim' and interview all employees or individuals who have 'knowledge relevant to the claim.'" *Pilate*, 865 So. 2d at 394 (quoting *Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d 183, 187 (Miss. 1994)). He also relies on *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1359, 1361 (N.D. Miss. 1987) (holding that "an adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim").

Accordingly, Lovelady argues that the Plaintiffs have not alleged facts that, even taken as true, would rise to the gross negligence standard. Instead, he contends that the Plaintiffs have alleged a mere pocketbook dispute, for which he cannot be held liable.

As the Defendant, Lovelady bears the burden of proving he is fraudulently joined. *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000). "Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d

644, 647 (5th Cir. 2003). Lovelady does not allege fraud. Therefore, for Lovelady to prevail, the Court must determine "[t]hat there is *absolutely no possibility* that the Plaintiff[s] will be able to establish a cause of action [against Lovelady] in state court." *Id.* (additional citations omitted) (emphasis added). There are two ways the Court can determine whether the Plaintiffs have stated a viable claim against Lovelady. First, the Court can apply the typical Rule 12(b)(6) analysis, which includes "[l]ooking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant…if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Second, in limited circumstances where "[a] plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder" the court may pierce the pleadings and conduct a summary inquiry. *Id.*

The Court will begin by setting forth the specific allegations contained in the Plaintiffs' Complaint [2]:

> 17. Eckford and T.C. continued to work with Lovelady to resolve their underinsured motorists claims, but Lovelady requested Eckford's employment information and opted to take a "wait-and-see" approach although having T.C.'s future medical information.
>
> 18. By August 23, 2022, Lovelady refused to negotiate further, and Eckford's and T.C.'s claims are in a perpetual state of delay.
>
> . . .
>
> 48. Upon information and belief, Lovelady breached his duty by basing his damage assessment on an incomplete investigation of Plaintiffs' damages.

[2] at p. 3, 9.

7

This Court has previously granted a plaintiff's motion to remand on relatively similar facts. *See Brandon v. Shelter Mut. Ins. Co.*, 2017 WL 775803 (N.D. Miss. Feb. 27, 2017). There, Leon Brandon sought coverage from his insurance company, Shelter Insurance, for fire loss and smoke damage to his house. *Id.* at 1. Shelter assigned Bill Morgan as the insurance adjuster. *Id.* After repeatedly and unsuccessfully attempting to contact Shelter and Morgan for five months following the submission of his claim, Brandon filed his complaint against both Shelter and Morgan in state court. *Id.* He asserted the following claims against the defendants: breach of contract; breach of the warranty of good faith and fair dealing; gross negligence in not providing a timely settlement in plaintiff's time of loss; willful, wanton, and intentional deception; and bad-faith delay in processing of the claim. *Id.* Shelter timely removed the case to this Court premising federal jurisdiction of the basis of diversity jurisdiction. *Id.* Brandon then filed a motion to remand arguing that Morgan was improperly joined and that his non-diverse status should be disregarded for purposes of diversity jurisdiction because Brandon had not alleged any facts supporting a claim of gross negligence against Morgan. *Id.*

Looking only at the allegations of Brandon's complaint, this Court held that it could not conclude that Brandon had *no possibility of recovery* against Morgan. *Id.* at 4. Specifically, Brandon alleged that after filing his claim and providing the requested documentation, he attempted to contact both the insurance company and adjuster "at least ten times in a thirty-day period after the fire" to quickly resolve his claims because he and his daughter needed a place to live. *Id.* Furthermore, Brandon alleged that the "[d]efendants unreasonably and arbitrarily delayed the settlement of his fire loss." *Id.* He contended that after making numerous calls and not hearing back from the insurance company, he was finally able to reach Morgan, at which time he "[a]sk[ed] Morgan what more he could do facilitate getting his home repaired, but Morgan was indifferent,

8

apathetic, inattentive, and unsympathetic, and did not do anything to help except give Brandon a phone number to call of the same people who were ignoring his pleas for help in the first place." *Id.*

Based on the facts contained in the complaint, the Court found that Shelter did not meet its burden in proving that Morgan had been fraudulently joined. *Id.* at 6. In particular, the Court held "[t]hat the determination depend[ed] on the facts and evidence in the particular case," and in this case, the Court determined that Morgan was acting as an agent of Shelter and failed to promptly investigate claims and communicate with Brandon which led to a ten-month delay of his claim. The Court further concluded that, not only based on the facts alleged, but also considering the complexity of fraudulent joinder cases, it could not find that Brandon had no reasonable basis of recovery for gross negligence against Morgan. *Id.* Therefore, the Court remanded the case because of Morgan's non-diverse status. *Id.*

Notably, in *Berry v. Hardwick*, the Fifth Circuit held that the plaintiffs could not recover against the insurance agent and investigator because the one-year delay in issuing a payment did not amount to gross negligence. 152 F. App'x 371, 375 (5th Cir. 2005). In reaching its decision, the Fifth Circuit relied on a factually analogous case, *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777 (Miss. 2004). There, the Mississippi Supreme Court held that a ten-month delay was at most negligent, but the delay did not amount to gross negligence on the insurance adjuster's behalf. *Id.* (citing *Jeffcoat*, 887 So. 2d at 783).

Here, the Plaintiffs allege that Lovelady's failure to conduct a prompt, reasonable, and diligent investigation placed their claims in state of delay for eight months. As noted above, there are instances where courts have held that a ten-month delay is not sufficient to constitute gross negligence. *See id*. Moreover, in one case, the Fifth Circuit held that even a one-year delay did not

amount to gross negligence. *See Berry*, 152 F. App'x at 375. However, as this Court concluded in *Brandon*, the determination of whether an adjuster's actions are grossly negligent hinges on the facts and evidence of the case and not *just* the length of the delay. In other words, it is a fact-specific inquiry.

Although the delay in the case at bar is eight months and the Plaintiffs rely heavily on the holding from *Wetherbee* where the Mississippi Supreme Court did find that an eight-month delay constituted gross negligence, it is not the eight-month delay alone that leads the Court to conclude that the Plaintiffs have alleged a plausible claim of gross negligence against Lovelady. According to the Plaintiffs' Complaint [2], Lovelady could have been assessing their claims within the eight-month period, yet he chose not to because he was waiting on additional documentation.

Importantly, the subject accident occurred on January 5, 2020, and according to the Complaint [2], Lovelady received at least *some* documentation related to the accident and the Plaintiffs' potential claims as early as March 20, 2020.[4] Although unclear from the Complaint [2] exactly what documentation Lovelady received at the time, the Plaintiffs further allege that their underinsured motorist claim was submitted on December 10, 2021. The Plaintiffs contend that, at minimum, Lovelady had all the information that he needed at that time. However, it was not until August 2022—approximately nine months after the Plaintiffs settled with Kelly's insurer (which occurred on November 16, 2021) that Lovelady decided the Plaintiffs' claims were not worth policy limits. The Court emphasizes that the specific facts of this case are distinguishable from the *Berry* and *Jeffcoat* cases. Neither of those cases involved a scenario where the loss had occurred several months prior to the claim being submitted. In other words, the Court finds it critical that

---

[4]According to the Plaintiffs' Complaint [2], Shawn Kelly originally demanded coverage from Alfa; however, on March 20, 2020, Alfa, through Lovelady, determined that Kelly was 100% at-fault in the accident. Therefore, at that time, Alfa and Lovelady had in their possession some documentation related to the Plaintiffs' claims.

10

the subject accident had occurred significantly prior to the submission of the claim, and it, at least arguably, leads to a scenario where the delay is not as justifiable as it would be in a situation where the accident had only recently occurred and more time was needed to investigate. Such is not the case here. Alfa had previously determined that the accident itself was solely Kelly's fault. Taking all of this into account, the Court cannot find that there is *no reasonable basis for recovery* against Lovelady.

As this Court held in *Brandon*, "[fraudulent joinder] cases highlight the complexity involved in determining whether a plaintiff has made out a claim for negligence against an insurance agent and seemingly indicate that the determination depends on the facts and evidence in the particular case." *Brandon,* 2017 WL 775803 at *5. While the Court agrees that an insurance adjuster has a duty to fully investigate a claim, and Lovelady contends that is what he was doing when he requested additional documentation, Lovelady bears the heavy burden of proving that the Plaintiffs *have no possibility of recovery*. He has not done so.

In reaching this conclusion based upon a typical Rule 12(b)(6) analysis, the Court also notes Lovelady's request that the Court consider other evidence and conduct a summary inquiry. In particular, Lovelady asks this Court to consider e-mails and other documentation indicating that he had indeed taken additional steps to investigate the claim. As noted above, in limited circumstances where "[a] plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder" the court may pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573.

While cognizant of Lovelady's request, the Fifth Circuit has cautioned that "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Hicks v. Martinrea*, 12 F.4th 511, 515

11

(5th Cir. 2021) (quoting *Smallwood*, 385 F.3d at 573-74). Such is not the case here. In essence, Lovelady asks the Court to consider e-mails and interpret the same to preclude recovery. To do so would, in the Court's view, go beyond the limited "summary inquiry" permissible at this stage of the proceedings but would, instead, resolve a question of fact or, at least, constitute a summary judgment type analysis. Lovelady's request asks the Court to go beyond its authority at this stage of the proceedings.

*Conclusion*

For the reasons set forth above, Lovelady's Motion to Dismiss [5] is DENIED. The Plaintiffs' Motion to Remand [10] is GRANTED. The case is hereby REMANDED to the Circuit Court of Lowndes County, Mississippi. The Clerk of Court is directed to take all steps necessary to accomplish the remand. This CASE is CLOSED.

SO ORDERED, this the 15th day of November, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE